# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 12 2018, 9:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ashlee Parsley,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | December 12, 2018<br><br>Court of Appeals Case No.<br>18A-CR-221<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Grant W. Hawkins, Judge<br><br>Trial Court Cause No.<br>49G05-1504-F5-13874 |

**Brown, Judge.**

[1] Ashlee Parsley ("Ashlee") appeals her convictions for false passing of a lottery ticket, theft, five counts of money laundering, and perjury. Ashlee raises several issues which we consolidate and restate as whether the evidence is sufficient to sustain her convictions. We affirm.

## Facts and Procedural History

[2] In 2012, Jimmy Parsley ("Jimmy") became the executor of the estate of his mother who had owned a family business, Parsley's Package Liquors Inc. ("Parsley's"), in Plainfield, Indiana. Jackie Parsley, II ("Jackie"), who is Jimmy's nephew, managed the store. Ashlee was in a relationship with Joseph Parsley ("Joseph"), who is Jackie's brother and Jimmy's nephew, and later married Joseph. On June 24, 2014, the store's license to sell lottery products for the Hoosier Lottery was suspended at which time the store's lottery terminal was made inactive and the store was required to stop selling lottery tickets.[1] In July 2014, Fronda Fisher, a sales representative for the Hoosier Lottery assigned to Parsley's, visited the store with the intention of giving the store a credit for the tickets in the store, met with Jackie, retrieved the lottery tickets from the vending machine, and believed she had retrieved all of the tickets in

---

[1] The Chief of Staff for the Hoosier Lottery testified that the store's license was suspended because paperwork was submitted which listed a person as an owner who had not been listed as an owner previously and the new person had a title of executor of an estate. When a retailer's license is suspended, the retailer's lottery terminal is turned off and the retailer can no longer activate tickets. In general, when a retailer receives a pack of tickets, the retailer can use the lottery terminal to confirm receipt. The retailer also uses the terminal to activate a pack of tickets when it is ready to place the tickets for sale. When a ticketholder has a winning ticket, the ticketholder has the ticket validated in order to receive the prize. The ticketholder may visit any participating retailer with a license to validate winning tickets with a prize amount of less than $600 and must visit a prize payment location if the prize amount is $600 or greater.

the store. Jimmy later observed that the tickets from the vending machine, which he believed included high-dollar and twenty-dollar tickets, had been retrieved, but that one- and two-dollar tickets had been left in slots at the end of the counter. He also discovered that, while the store's license was suspended, the store had continued to sell the lottery tickets left in the slots at the end of the counter which had already been activated. The store submitted a retailer application for a certificate of authority to sell lottery products, which was prepared by Jackie and signed by Jimmy on September 1, 2014, to the licensing division of the Hoosier Lottery. Jackie sent Fisher several text messages regarding reactivation of the store's lottery terminal.

[3] At 1:11 p.m. on September 16, 2014, ticket number 007 from pack number 057013 was scanned at a convenience store near Parsley's, but the ticket was rejected because pack 057013 had not yet been activated. At about 5:08 p.m. on September 26, 2014, the lottery terminal was reactivated. At approximately 5:11 p.m. on the same date, pack number 057013, which contained twenty-five twenty-dollar tickets, was activated at Parsley's.[2] A recording taken from a video camera at Parsley's shows that Jackie exited the store with nothing in his hands soon after the lottery terminal was reactivated, reentered the store holding an object in one hand,[3] and then again exited the store. At

---

[2] The store had confirmed receipt of the pack on May 30, 2014. Pack 057013 was the only pack activated at Parsley's between September 26 and October 3, 2014.

[3] Pack 057013 contained tickets for the game "100X the Cash." A police detective testified that the object appeared to be a lottery ticket with the same colors as a ticket for 100X the Cash.

approximately 5:13 p.m. on the same date, ticket 007 was validated at the convenience store near Parsley's. On October 1, 2014, Jimmy called Fisher and informed her that Parsley's was going to be sold, additional tickets had been discovered and he wanted credit for them, and Fisher returned to the store to retrieve the rest of the tickets and help Jimmy prepare for the sale. She processed a credit for certain one-, two-, and five-dollar tickets that day. The liquor store was sold on October 3, 2014.

[4] On October 3, 2014, Ashlee went to the Hoosier Lottery headquarters in Indianapolis to redeem winning lottery ticket number 012 from pack number 057013 for a prize of two million dollars. A security specialist interviewed Ashlee and completed a ticket redemption questionnaire. The completed questionnaire indicates that Ashlee reported she had purchased the winning ticket at Parsley's on October 1, 2014, at approximately 8:30 p.m. Ashlee elected to receive a lump sum payment and, after tax withholdings, received $1,139,948.09. Ashlee later purchased a GMC Acadia, a Ford F150, a house, and a box trailer. Also, from December 2014 through February 2015, amounts totaling $470,000 were transferred from Ashlee's bank account to Joseph's bank account.[4] Jimmy learned from a customer that there was a lottery ticket winner from Parsley's, looked up the lottery winner and saw a picture of Joseph and

---

[4] At the time Ashlee redeemed the winning lottery ticket, her last name was Campbell. Ashlee married Joseph on November 1, 2014.

Ashlee, knew that family was not allowed to buy tickets, assumed the ticket was stolen, and informed the Hoosier Lottery that he did not sell the winning ticket.

[5]     On April 22, 2015, the State charged Ashlee with corrupt business influence as a level 5 felony; false passing of a lottery ticket as a level 5 felony; theft as a level 5 felony; four counts of forgery as level 6 felonies; five counts of money laundering as level 6 felonies; perjury as a level 6 felony; and two counts of theft as class A misdemeanors.[5]  The State moved to dismiss the corrupt business influence, forgery, and misdemeanor theft charges.  The jury found Ashlee guilty as charged of false passing of a lottery ticket and theft as level 5 felonies, and five counts of money laundering and perjury as level 6 felonies.[6]  Ashlee filed a motion to correct errors asserting that the verdicts were against the great weight of the evidence and requesting a new trial, and the court denied the motion.  The court sentenced Ashlee to three years suspended except for time served for her level 5 felonies and one year suspended except for time served for her level 6 felonies.  It ordered that she be placed on probation for three years and complete forty hours per month of community service during that time, and pay restitution to the Hoosier Lottery.

---

[5] The State charged Jackie and Joseph as codefendants.

[6] The trial court granted Joseph's motion for judgment on the evidence.

## *Discussion*

[6]     The issue is whether the evidence is sufficient to sustain Ashlee's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[7]     Ashlee concedes, with respect to her conviction for false passing of a lottery ticket, that she passed the winning lottery ticket; however, she argues that the evidence does not show that she did so with the intent to defraud the Hoosier Lottery. In particular, she argues that video from September 30, 2014, "shows a woman that could well have been [her] making a purchase from the lottery counter at the liquor store"; "[t]his is consistent with her report to the lottery that she purchased the winning ticket"; there was no evidence that she received her ticket from Jackie or how she came into possession of the ticket; and that, without evidence that she acquired the ticket by unlawful means, the State cannot prove that she intended to defraud the Hoosier Lottery. Appellant's Brief at 16. She similarly argues, as to her theft conviction, that exercising control over the lottery winnings could have been unauthorized only if the evidence shows that her possession of the winning ticket was unlawful and that the State did not offer any concrete evidence to show how she acquired the ticket. She asserts as to her perjury conviction that the State did not prove the

identity of the person who purchased the ticket, how she came to possess the ticket, or that she knew, when she signed the claim form on October 3, 2014, that store employees were prohibited from purchasing tickets from the store. She also argues that, to convict her of money laundering, the State was required to establish that the money she received from the lottery was obtained by theft and that, because her conviction for theft fails, her money laundering convictions must also fail.

[8] The State maintains that Ashlee is essentially challenging the evidence of her intent to defraud and is requesting this Court to reweigh the evidence. It argues there is sufficient evidence to establish that Ashlee did not purchase the winning lottery ticket and points to the timeframe she told the lottery security specialist that she had purchased the ticket, the sequence of validation for pack 057013, that ticket 007 from pack 057013 was scanned before the pack was activated, and that none of the tickets from pack 057013 were validated at the store. It also argues the jury rejected Ashlee's argument that she purchased the winning ticket on September 30, 2014, and that the evidence sufficiently demonstrates she did not lawfully possess the winning ticket, made purchases with the lottery proceeds, and did not purchase the ticket contrary to the statement she signed under penalty of perjury.

[9] Ind. Code § 4-30-14-3 provides that "[a] person who: . . . (3) with intent to defraud, falsely makes, alters, forges, passes, or counterfeits a lottery ticket; . . . commits a Level 5 felony." Ind. Code § 35-43-4-2 provides that a person who knowingly or intentionally exerts unauthorized control over property of another

person, with intent to deprive the other person of any part of its value or use, commits theft and that the offense is a level 5 felony if the value of the property is at least $50,000. Ind. Code § 35-45-15-5 provides that a person who knowingly or intentionally "acquires or maintains an interest in, receives, conceals, possesses, transfers, or transports the proceeds of criminal activity" commits money laundering and that the offense is a level 5 felony if the value of the proceeds or funds is at least $50,000. Ind. Code § 35-44.1-2-1 provides that a person who makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true, commits perjury, a level 6 felony.

[10] The record reveals that, on October 3, 2014, Ashlee visited a Hoosier Lottery prize payment location to redeem ticket number 012 and reported to the security specialist that she had purchased the ticket at Parsley's on October 1, 2014, at approximately 8:30 p.m. An investigator for the Hoosier Lottery testified, however, that he obtained a video recording of the Parsley's from October 1, 2014, and did not see any person purchasing any lottery tickets between 8:00 and 9:00 p.m. on that date. The investigator further testified that he interviewed Ashlee on December 2, 2014, and she told him that she had purchased the ticket at Parsley's between 8:00 and 9:00 p.m. on October 1, 2014. When asked "[d]id she indicate that she was sure that she had purchased the ticket on October lst," the investigator answered "Yes. I was not told of any other dates." Transcript Volume III at 107-108.

[11]     The investigator further testified that there are certain possible red flags such as tickets scanned prior to activation, tickets redeemed at retailers other than the issuing or selling retailer, and tickets redeemed out of order. The tickets in pack 057013 were for the game titled "100X the Cash," three packs of that game were assigned to Parsley's, and the cost of a ticket for the game was twenty dollars. Ticket number 007 from pack 057013 was scanned, or there was an attempt to validate the ticket, at a convenience store near to Parsley's on September 16, 2014, ten days before pack 057013 was activated. The lottery terminal at Parsley's was reactivated at about 5:08 p.m. on September 26, 2014, and pack number 057013 was activated using the terminal at approximately 5:11 p.m. Video shows that Jackie exited Parsley's soon after the terminal was reactivated, reentered the store with a ticket, and then again exited the store. Pack 057013 was the only pack of tickets activated at Parsley's after the terminal was activated on September 26, 2014, and before October 3, 2014. Eight winning tickets were validated from pack 057013, and none of those eight tickets were validated at Parsley's. The first ticket of the pack to be validated was ticket 007 at the nearby convenience store at approximately 5:13 p.m. on September 26, 2014, about two minutes after pack 057013 was activated at Parsley's. Six of the eight winning tickets were validated prior to October 3, 2014, and those six tickets had ticket numbers which were in sequence both higher and lower than ticket number 012.[7] Fisher retrieved lower-dollar tickets

_____

[7] Ticket numbers 7, 16, 4, 0, 5, and 6 were validated at or before about 4:03 p.m. on September 30, 2014, and ticket number 19 was validated on October 5, 2014.

from the store on October 1, 2014, and did not process the return of any tickets from pack 057013. Jimmy testified that high-dollar tickets, including twenty-dollar tickets, were in the vending machine, that the Hoosier Lottery had retrieved the tickets from the machine, that he returned to the store and found one- and two-dollar tickets in the slots at the end of the counter, and that those tickets were supposed to have been returned but the store had continued to sell them because they had already been activated and he had already paid for them. The jury was able to reasonably conclude that Ashlee did not lawfully obtain ticket number 012 on October 1, 2014, as she reported to the Hoosier Lottery.

[12] To the extent Ashlee argues that the woman in the video from September 30, 2014, could have been her making a purchase at Parsley's, we note that the video was played for the jury and shows a store employee tear tickets and give them to the purchaser. The store employee who assisted the woman in the video testified at trial that, while the person's physical structure appeared to be the same as Ashlee's, he did not recognize the woman in the video and could not say the person was Ashlee. In closing, Ashlee's counsel argued to the jury "[l]ook at the video. . . . That is Ashlee down to the way she stands," "[i]f you look at her video and when she's redeeming at the counter and there's a side angle of her standing at the counter at the Lottery, she's standing just like this," and "[s]he's standing just like this (Indicating). When she's at the counter on 9/30, while you can't see her face, all the . . . other features match her. . . . That is her. She made a mistake." Transcript Volume IV at 230. Tickets from

pack 057013 which were numbered in sequence higher and lower than ticket number 012 were validated before the evening of September 30, 2014, and on October 1, 2014, Fisher visited the store and processed the return of lower-dollar tickets which did not include any tickets from pack 057013. The trier of fact was not required to find Ashlee's argument that she had purchased ticket number 012 on September 30, 2014, to be truthful or persuasive.

## *Conclusion*

[13] Based upon the record, we conclude that evidence of probative value was presented from which the jury as the trier of fact could determine that Ashlee passed the winning lottery ticket with intent to defraud the Hoosier Lottery, knowingly exerted unauthorized control over the currency of the Hoosier Lottery, knowingly possessed or transferred the proceeds of the theft, and made a false statement on her claim form.

[14] For the foregoing reasons, we affirm Ashlee's convictions.

[15] Affirmed.

Altice, J., and Tavitas, J., concur.